[Civ. No. 6814. First Appellate District, Division Two.—August 8, 1929.]

CARRIE E. LEVINGSTON, Appellant, v. JACOB LEVINGSTON, Respondent.

Owen D. Richardson and Bohnett, Hill & Campbell for Appellant.

Louis Oneal and Wm. F. James for Respondent.

STURTEVANT, J. —The plaintiff commenced an action against the defendant for separate maintenance. Therein she alleged cruelty on the part of the defendant. The defendant interposed an answer in which he denied the allegations of plaintiff's complaint and he also set up a cross-complaint alleging in one count plaintiff's desertion of him and in another count the extreme cruelty of the plaintiff. The plaintiff answered the cross-complaint and the action was tried before the trial court sitting without a jury. The trial court made findings in favor of the defendant and

from an interlocutory decree based thereon the plaintiff has appealed and has brought up a typewritten record.

The plaintiff makes one point—there was no sufficient evidence or corroboration of the charge of desertion upon which the decree was rendered. From the record it appears that the plaintiff and defendant intermarried at Denver, Colorado, February 20, 1901. They lived together until June 5, 1924. On that date they separated and since then they have lived separate and apart. The wife has lived continuously in New York City and the husband has lived continuously in the western states. At the time of the separation the defendant was conducting a hotel at Waterloo in the state of Iowa. Shortly after the separation he sold out and came to California and purchased the Hotel Vendome in San Jose. Afterward business compelled him to sell out and he made a sale on such terms that he had little or nothing left. A short time before the separation the plaintiff suspected that the defendant was committing acts of infidelity. The particular act arose some weeks prior to the separation. However, at that time one of the sons was in high school. The plaintiff waited until he finished his course and in June, 1924, she and two sons left for New York. The evidence is conflicting as to what conversations occurred between the two parties immediately before her departure. The plaintiff contends that she was waiting to be asked not to go. The defendant contends that he frequently asked her not to go but nevertheless she proceeded to make her arrangements to depart. While those arrangements were progressing the defendant says that she asked him whether he would make any remittances and that he made the reply that he wished she would not go but if she was determined to go that he would make remittances. He continued to make remittances of $200 per month until his business failed. When he ceased to make remittances certain conferences between the attorneys of the respective parties were held. Those conferences led to nothing and this action was commenced. There is no conflict in the evidence regarding the fact that the plaintiff sent for packers and had her personal belongings packed and shipped to New York; that at the same time the plaintiff and two sons left the family dwelling place; that when they left the defendant went with them to the depot and

kissed them good-bye; that, except as we will note, from that date forward no communications, written or otherwise, were exchanged between the defendant and the members of the family in New York. The plaintiff says she wrote a note to the defendant that some of her luggage was damaged in transportation and asked him to look into the matter. The defendant testified that he received no letter, but one of the maids in the house received a letter. The relations as just described continued down to the very date of the trial. There is some evidence in the record that neither the plaintiff nor her son Max, while in San Jose attending the trial, communicated with the defendant in any other manner except through their respective counsel.

That the plaintiff voluntarily left the family dwelling and took with her two of her children as recited above, was testified to by the defendant, the plaintiff, and their son Max, a young man twenty-four years of age. It may be that at the instant she left there was not evidence of intent to desert. However, that fact appeared very soon thereafter and was demonstrated by the subsequent conduct of the plaintiff, which we have already recited.

The plaintiff now contends that separation by consent is not desertion. That theory was not pleaded and the evidence thereon was distinctly conflicting. The defendant testified that he did not give his consent and the whole story is susceptible of the view that what the plaintiff did was by reason of her own determination and was done wholly without regard to the wishes of the defendant. There was no attempt made to plead or to prove the theories expressed in Civil Code, sections 101 and 102. The plaintiff did attempt to plead Civil Code, section 98, but her allegations did not bring her within its provisions. She did not plead and she did not prove, or attempt to prove, a single act of bodily harm or threats of bodily harm. She does not cite any authority to the effect that the section last cited includes within its scope mental cruelty as distinguished from bodily cruelty, inflicted or threatened.

It therefore appears that there was evidence sustaining the finding of the court that the plaintiff deserted the defendant and that the testimony of the defendant was corroborated.

We find no error in the record. The judgment is affirmed.

Nourse, J., and Koford, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 6, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 7, 1929, and the following opinion then rendered thereon:

THE COURT.—The petition for a hearing herein is denied. In denying said petition, however, we disapprove that concluding portion of the opinion of the appellate tribunal reading as follows: "The plaintiff did attempt to plead Civil Code Section 98, but her allegation did not bring her within its provisions. She did not plead and she did not prove, or attempt to prove, a single act of bodily harm or threats of bodily harm. She does not cite any authority to the effect that the section last cited includes within its scope mental cruelty as distinguished from bodily cruelty, inflicted or threatened," upon the authority of *Brandt* v. *Brandt*, 178 Cal. 548 [174 Pac. 55].

All the Justices present concurred.